## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, S.I. a/s/o COREY NIHART AND KATIE NIHART,<br><br>          Plaintiff,<br><br>     vs.<br><br>AMAZON.COM, INC.,<br><br>and<br><br>PECRON LLC,<br><br>          Defendants. | Case No. 21-cv-01749-KMM-DJF<br><br><br>**DEFENDANT PECRON LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

### <u>INTRODUCTION</u>

Pecron LLC, the sole remaining Defendant in this action, moves under FED. R. CIV. P. 56(a) for summary judgment dismissing Counts II and III of the Amended Complaint of Plaintiff American Family Mutual Insurance Company, S.I. a/s/o Corey Nihart and Katie Nihart ("American Family"). Summary judgment is appropriate for several alternative reasons, as explained below. Pecron LLC is at a loss as to why this Motion is necessary—why American Family continues prosecuting this action, given the palpable deficiencies. After American Family alleged, inexplicably, in its Amended Complaint that Pecron LLC was somehow responsible for designing, manufacturing, promoting, selling, packaging, distributing, *and* delivering the Aeiusny 400W Solar Generator Portable Power Station at issue in this action, American Family—even more

inexplicably—failed to take any discovery from Pecron LLC regarding these allegations and issues. The only evidence in the record, therefore, is that Pecron LLC performed none of these alleged functions. It simply had nothing to do with the Aeiusny 400W Solar Generator Portable Power Station at issue.

Additionally, on their merits (regardless of which entity American Family were to name as a defendant), American Family is unable to point to record evidence generating a material dispute of fact as to any of the elements of its claims. Therefore, Pecron LLC respectfully requests that the Court grant its Motion for Summary Judgment.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      At issue in this action is an Aeiusny 400W Solar Generator Portable Power Station that was destroyed by fire on January 2, 2021. (Mar. 8, 2022 Am. Compl., Dkt. No. 30, ¶¶ 8, 14, 15.)

2.      On November 21, 2019, Corey Nihart purchased from third-party seller Aeiusny the Aeiusny 400W Solar Generator Portable Power Station listed for sale on amazon.com—and which is at issue in this action. (Mar. 16, 2022 Amazon.com, Inc. ("Amazon") Answer, Dkt. No. 32, ¶ 8.)

3.      In its initial Complaint, American Family alleged, not on information and belief, that "Aeiusny" manufactured the Aeiusny 400W Solar Generator Portable Power Station at issue in this action. (Aug. 2, 2021 Compl., Dkt. No. 1, ¶ 13.)

4.      The Aeiusny 296wh Battery Pack Data alleged to have been inside of the Aeiusny 400W Solar Generator Portable Power Station at issue in this action was

produced on August 26, 2019. (Mar. 30, 2023 Choudek Report, June 16, 2023 Declaration of Samantha J. Ellingson ("Ellingson Decl.") Ex. 1, at 8.)

5.      Pecron LLC is a limited liability company that was incorporated in the State of Minnesota on November 13, 2019. (Feb. 28, 2022 Crowder Decl., Dkt. No. 29-1, ¶ 5.)

6.      In its Amended Complaint, American Family claims Pecron LLC was involved in "promoting, selling, packaging and distributing" and was also responsible for the "design, manufacture, packaging, sale and delivery" of the Aeiusny 400W Solar Portable Power Station at issue in this action. (Mar. 8, 2022 Am. Compl., Dkt. No. 30, ¶¶ 27, 34.)

7.      Despite this allegation, American Family did not identify Pecron LLC, or any representative of Pecron LLC, as "likely to have discoverable information . . . that [American Family] may use to support its claims" in American Family's Fed. R. Civ. P. 26(a)(1) initial disclosures. (Nov. 3, 2021 American Family Initial Disclosures, Ellingson Decl. Ex. 2, at 1–2.)

8.      Nor did American Family supplement these disclosures after they were served on November 3, 2021, to identify Pecron LLC, or any representative of Pecron LLC, as "likely to have discoverable information . . . that [American Family] may use to support its claims" even though American Family had, on November 3, 2021, "reserve[d] the right . . . to revise, correct, add to, supplement and/or clarify any of the information given in these Initial Disclosures as additional information bec[ame] available during discovery." (*Id.* at 2.)

9.      During the window that fact discovery was open in this action, neither American Family nor Amazon took any discovery from Pecron on the issue of Pecron LLC's role (or lack thereof) in designing, manufacturing, promoting, selling, packaging, distributing, or delivering the Aeiusny 400W Solar Generator Portable Power Station at issue in this action. (Ellingson Decl. ¶ 3.)

10.     Pecron LLC did not have any role in manufacturing the Aeiusny 400W Solar Generator Portable Power Station at issue in this action. (May 12, 2023 Shi Decl., Dkt. No. 91, ¶ 3.)

11.     Nor did Pecron LLC have any role in distributing, selling, or transmitting the Aeiusny 400W Solar Generator Portable Power Station at issue in this action. (*Id.* ¶ 4.)

12.     Pecron LLC was not even authorized to sell products on amazon.com until December 17, 2019. (*Id.* ¶ 5.)

## ARGUMENT

"The party opposing summary judgment must 'cit[e] particular materials in the record' or show that the 'materials cited do not establish the . . . absence of a genuine dispute.'" *Erickson v. Nationstar Mortg., LLC*, 31 F.4th 1044 (8th Cir. 2022) (quoting FED. R. CIV. P. 56(c)(1)). "'A mere 'scintilla of evidence' is insufficient to defeat summary judgment, and if a nonmoving party who has the burden of persuasion at trial does not present sufficient evidence as to any element of the cause of action, then summary judgment is appropriate.'" *Id.* (quoting *Wagner v. Campbell*, 779 F.3d 761, 766 (8th Cir. 2015) (quoting *Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 820 (8th

4

Cir. 2010))). Likewise, "[s]peculation and conjecture are insufficient to defeat summary judgment." *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 794 (8th Cir. 2012).

## I.   American Family's strict-liability allegations are broader than what Minnesota law permits.

Under Minnesota law, the scope of strict-liability claims is to be narrowly construed. *See Lyzhoft v. Waconia Farm Supply*, Nos. A12-2237, A12-2238, 2013 Minn. App. Unpub. LEXIS 603, at *5–7 (Minn. Ct. App. July 8, 2013) (citing authority establishing that, under Minnesota law, strict-liability claims in products-liability cases may be pursued only against a manufacturer, distributor, or retailer); *see also Tabish v. Target Corp.*, No. A10-2129, 2011 Minn. App. Unpub. LEXIS 627, at *18 (Minn. Ct. App. June 27, 2011) (holding that "the company Target contracted with to assemble the bicycle" at issue could not be held liable on a strict-liability claim because it "falls outside of the traditional strict-liability scope").

American Family's strict-liability claim against Pecron LLC (Count II) alleges: "At all times material, Pecron was in the business of promoting, selling, packaging and distributing products, including products like the Generator that caused the fire at the Nihart Residence." (Mar. 8, 2022 Am. Compl., Dkt. No. 30, ¶ 27.) American Family, therefore, did not pursue a strict-liability claim against Pecron LLC on the ground that Pecron LLC was the purported "manufacturer" of the Aeiusny generator. This is by contrast to American Family's negligence claim, which asserts that Pecron LLC was somehow involved "in the design, manufacture, packaging, sale and delivery" of the Aeiusny generator. (*Id.* ¶ 34.) American Family's strict-liability claim, under Minnesota

law, cannot encompass "promoting" or "packaging" the Aeiusny generator (though there is also no evidence in the record that Pecron LLC did either of these). Pecron LLC, accordingly, declines to address these theories below.

## II.   There is no evidence in the record that Pecron LLC manufactured the Aeiusny generator.

Dismissal of a negligence or strict liability claim asserted against a purported manufacturer is appropriate where there is no evidence in the record that the entity alleged to be the manufacturer manufactured the product at issue. *See Kladivo v. Sportsstuff, Inc.*, No. 06-4924 (JRT/RLE), 2008 U.S. Dist. LEXIS 67267, at \*11–13 (D. Minn. Sept. 2, 2008) (summarily dismissing strict liability and negligence claims against party because "review of the record reveals no evidence suggesting that [party] exercised any control over the design or manufacture of the [product], or that it provided instructions or warnings to [opposing party] regarding the alleged defects in the [product]"); *Roufs v. AG Sys., Inc.*, No. C0-97-1478, 1998 Minn. App. LEXIS 395, at \*4–6 (Minn. Ct. App. Apr. 14, 1998) (summarily dismissing negligence and strict liability claims as against purported manufacturer-defendant as there was no evidence in the record that defendant manufactured the product at issue). There is no evidence in the record that Pecron LLC manufactured the Aeiusny generator at issue in this litigation. Accordingly, American Family's negligence claim against Pecron LLC, as the purported "manufacturer" of the Aeiusny generator fails because Pecron LLC owed no duty to American Family or its insureds.

Moreover, where a defendant-entity did not come into existence until after the product at issue in the litigation was manufactured, the defendant cannot be liable as manufacturer as a matter of law. *See Fine v. Schwinn Cycling Fitness, Inc.*, No. C3-00-1079, 2000 Minn. App. LEXIS 1292, at *9 (Minn. Ct. App. Dec. 26, 2000) (affirming summary dismissal of products-liability claim; holding that successor to entity that indisputably manufactured product at issue could not be held liable as it did not manufacture the product at issue (predecessor did)). The "Aeiusny 296wh Battery Pack Data" presented by American Family's expert, Luke Choudek, states that the "Production Date" of this Aeiusny battery pack for the Aeiusny generator was "2019-08-26." (Mar. 30, 2023 Choudek Report, Ellingson Decl. Ex. 1, at 8.) The date the Aeiusny generator was manufactured, therefore, could be no earlier than August 26, 2019. Amazon's counsel attested: "According to publicly available records, Pecron LLC is a limited liability company and was incorporated in the State of Minnesota on November 13. 2019." (Feb. 28, 2022 Crowder Decl., Dkt. No. 29-1, ¶ 5.)

## III.    There is no evidence in the record that Pecron LLC distributed the Aeiusny generator.

Dismissal of a products-liability claim asserted against a purported distributor is appropriate where there is no evidence in the record that the entity alleged to be the distributor distributed the product at issue. *See Roufs*, 1998 Minn. App. LEXIS 395, at *6–8 (summarily dismissing products-liability claims as against purported distributor-defendant as there was no evidence in the record that defendant transferred the product at issue). Here, it is undisputed that the Aeiusny generator was sold by Aeiusny through

Amazon. (Mar. 16, 2022 Amazon Answer, Dkt. No. 32, ¶ 8.) There is no evidence in the record that Pecron LLC was part of the chain of distribution at all.[1]

## IV. There is no evidence in the record that Pecron LLC designed the Aeiusny generator.

A defective-design theory fails as against a particular defendant where there is no evidence in the record that the defendant designed the product at issue. *See Finke v. Hunter's View, Ltd.*, 596 F. Supp. 2d 1254, 1271 (D. Minn. 2009) (where plaintiff claimed product was defectively designed (as opposed to defectively manufactured), plaintiff was unable to demonstrate applicability of MINN. STAT. § 544.41, subd. 3 factors as a matter of law as "[t]here [was] no evidence that [defendant] was involved in the design of the [product]"); *Knott v. AMFEC, Inc.*, No. 09-CV-1098 (PJS/AJB), 2010 U.S. Dist. LEXIS 110837, at *27 (D. Minn. Oct. 18, 2010) (explaining that defendant "did *not* design the [product], and this Court has already dismissed [plaintiff's] design-defect claim against [defendant]") (emphasis in original); *Schweich v. Ziegler, Inc.*, 463 N.W.2d 722, 731 (Minn. 1990) (holding that even if seller had "exercise[d] . . . significant control over the manufacture of the [product]," there was no liability under § 544.41, subdivision 3 when the seller's "modifications did not create the defect causing injury"). Here, there is no evidence in the record that Pecron LLC designed the Aeiusny generator. Moreover,

---

[1] In light of the Minnesota law referenced above, American Family's allegations that Pecron LLC was somehow involved in "promoting" or "packaging" the Aeiusny generator could not give rise to strict liability even if they had any record support—though they are similarly unsupported and unsupportable.

as explained above, Pecron LLC did not exist when the Aeiusny generator at issue was designed.

## V.   Even if American Family had a basis for including Pecron LLC in this action in the first place, American Family's products-liability claims fail as a matter of law for a panoply of reasons.

As explained above, American Family had no basis for joining Pecron LLC as a defendant in this action as Pecron LLC had nothing to do with the design, manufacture, or distribution of the Aeiusny generator. Putting this aside, and assuming, *arguendo*, American Family had some basis for pursuing products-liability claims against Pecron LLC, American Family's defective-design claims would fail as a matter of law for at least the following reasons: (1) American Family cannot identify what design defect, if any, existed at the time of the fire; (2) American Family offered no expert testimony on any design defect; (3) American Family cannot demonstrate that any design defect caused the fire; (4) even if American Family could demonstrate that Pecron LLC had any interaction with the Aeiusny generator at issue, American Family cannot show what condition the Aeiusny generator was in when any interaction with Pecron LLC concluded; (5) American Family failed to establish that an alternative design for the Aeiusny generator would have been safer; and (6) American Family cannot demonstrate that Pecron LLC had actual knowledge of the condition of the Aeiusny generator at issue and the risks involved in that condition. American Family's manufacturing-defect claims would fail as a matter of law for at least the following reasons: (1) American Family cannot demonstrate that any manufacturing processes that led to the creation of the Aeiusny generator were substandard or defective; (2) American Family offered no expert

testimony on any manufacturing defect; (3) American Family cannot demonstrate that any design defect caused the fire; and (4) American Family cannot demonstrate that Pecron LLC had actual knowledge of the condition of the Aeiusny generator at issue and the risks involved in that condition.

### A.   American Family's strict-liability claim is vaguely asserted such that it is unclear whether American Family is attempting to assert a defective-design or defective-manufacturing claim.

In asserting its Count II, strict liability, claim, American Family alleges: "The Generator failed and caused property damage because it was defectively designed or manufactured." (Mar. 8, 2022 Am. Compl. Dkt. No. 30, ¶ 29.) Defective-design and defective-manufacturing claims are two distinct causes of action, with separate elements.

"In order to prevail on a claim for negligent and defective design, a plaintiff must prove by a preponderance of the evidence that: (1) the product 'was in a defective condition unreasonably dangerous to the user,' (2) the defect existed when it left the manufacturer's control,' and (3) 'the defect was the proximate cause of the injury sustained.'" *Roberson v. STI Int'l*, No. A20-0020, 2020 Minn. App. Unpub. LEXIS 724, at *7 (Minn. Ct. App. Aug. 31, 2020) (quoting *Marcon v. Kmart Corp.*, 573 N.W.2d 728, 731 (Minn. Ct. App. 1998) (quotation omitted), *review denied* (Minn. Apr. 14, 1998)). Design-defect claims "merge[] strict liability, negligence, and implied warranty remedies into a single theory of products liability." *Gross v. Running*, 403 N.W.2d 243, 245 (Minn. 1987) (referencing *Bilotta v. Kelley Co.*, 346 N.W.2d 616 (Minn. 1984)).

A manufacturing-defect claim is different. "A manufacturing defect in the product liability context means 'the product departs from its intended design.'" *Harrison v.*

10

*Harrison*, 733 N.W.2d 451, 454 n.2 (Minn. 2007) (quoting REST. (THIRD) OF TORTS: PRODUCTS LIABILITY § 2(a) (1998)). For this reason, in manufacturing-defect cases, the defect must be proved by focusing on the condition of the product itself. *Bilotta*, 346 N.W.2d at 621–22. This difference between the two claims accounts, for example, for the Minnesota Supreme Court's observation, in *Patton v. Newmar Corporation*: "It must be emphasized that this is not simply a design defect case, where at least one court has suggested that the prejudice to the defendant from spoliation may be less than in a manufacturing defect claim." 538 N.W.2d 116, 119 (Minn. 1995).

American Family's Amended Complaint does not reflect recognition of the distinction between design-defect and manufacturing-defect claims. It fails to specify whether American Family's theory is that the Aeiusny generator was "defectively designed or manufactured." (Mar. 8, 2022 Am. Compl., Dkt. No. 30, ¶ 29.) Moreover, American Family did not allege, as part of its strict-liability claim against Pecron LLC that Pecron LLC should be held strictly liable as an alleged designer or manufacturer, but only as allegedly "promoting, selling, packaging and distributing products, including products like the Generator that caused the fire at the Nihart Residence." (*Id.* ¶ 27.) American Family only alleged as part of its negligence claim against Pecron LLC that Pecron LLC should be held liable as an alleged designer or manufacturer. (*Id.* ¶¶ 34–35.) Consequently, to establish liability on the part of Pecron LLC as a designer or manufacturer, American Family would have to prove Pecron LLC had "knowledge of the condition of the product and the risks involved in that condition." *Bilotta*, 346 N.W.2d at

622. As discussed below, American Family is unable to point to any evidence regarding these additional elements.

### B. American Family cannot establish a design-defect claim as against Pecron LLC as a matter of law.

For at least the following six reasons, given the record and undisputed facts, American Family could not prevail on a design-defect theory as against Pecron LLC under Minnesota law.

### 1. American Family cannot identify what design defect, if any, existed at the time of the fire.

American Family must first establish that the Aeiusny generator "'was in a defective condition unreasonably dangerous to the user'" when the fire occurred. *Roberson*, 2020 Minn. App. Unpub. LEXIS 724, at *7 (quoting *Marcon*, 573 N.W.2d at 731). Though American Family submitted two expert reports that purport to address the cause and origin of the fire, they do not establish the existence of any defect in the Aeiusny generator that allegedly combusted. Douglas Noah, American Family's first expert, only concluded: "Laboratory analysis conducted as part of this investigation concluded that the cause of this fire was a Aeiusny® 400W Solar Generator Portable Power Station that was plugged in and charging." (Mar. 20, 2023 Noah Report, Ellingson Decl. Ex. 3, at 7.)

Although Noah indicates that destructive testing was conducted with respect to "the electronic items and lithium battery cells" that were "harvested" from the site of the fire on January 21, 2021, he does not describe any such testing. (*Id.* at 6.) Noah references and appears to rely upon the analysis of American Family's other expert, Luke

Choudek, who similarly only opined, in relevant part, that "[t]he only identified source of ignition was the energy released from the failed cells within the Aeiusny Power Supply" and "[a] failure of the cells within the Aeiusny battery pack cannot be eliminated as a cause of this fire." (Mar. 30, 2023 Choudek Report, Ellingson Decl. Ex. 1, at 12.) Choudek also does not describe the "destructive examination" that he only references in stating that "[a]ll evidence was photographed and documented prior to any destructive examination." (*Id.* at 5.) There is also no indication by either Noah or Choudek that any fire-testing was performed. (*See generally* Mar. 20, 2023 Noah Report, Ellingson Decl. Ex. 3; Mar. 30, 2023 Choudek Report, Ellingson Decl. Ex. 1.)

Both Noah and Choudek acknowledge that analysis—but not fire-testing—was performed of an "exemplar" Aeiusny generator rather than the actual generator that combusted. (Mar. 20, 2023 Noah Report, Ellingson Decl. Ex. 3, at 7; Mar. 30, 2023 Choudek Report, Ellingson Decl. Ex. 1, at 9, 11.) Reliance on this exemplar is particularly suspect because, as Choudek explains, the exemplar contained six fewer lithium-ion battery cells than what "literature published by Aeiusny" indicated the *actual* generator contained. (*See* Mar. 30, 2023 Choudek Report, Ellingson Decl. Ex. 1, at 4–5.)

Summary judgment is appropriate on this ground alone—that the actual generator at issue cannot be located or analyzed. As the Minnesota Court of Appeals explained in *Roufs* in affirming the district court's summary dismissal of products-liability claims: "Even if [defendant] was the manufacturer, . . . the critical item of evidence is missing, as in **Patton**, and there is no way to establish what condition the [product] was in at the time of the accident." 1998 Minn. App. LEXIS 395 at *14 (emphasis in original); *see also*

13

*Roberson*, 2020 Minn. App. Unpub. LEXIS 724, at *7 (affirming summary dismissal of products-liability claims because, among other deficiencies, plaintiff "did not submit any admissible evidence of the existence of a defect").

### 2. American Family offered no expert testimony on any product defect.

Expert testimony is necessary to demonstrate that a product was defectively designed or manufactured. *See, e.g.*, *Wagner v. Hesston Corp.*, No. 03-4244 (JNE/JGL), 2005 U.S. Dist. LEXIS 13567, at *34–35 (D. Minn. June 30, 2005) (concluding that, where plaintiff brought defective-design and defective-manufacturing, among other, claims, "[b]ecause all of [plaintiff's] claims require a showing that the [product] was defective, expert testimony is required" and, without the testimony of experts, "there are no genuine factual disputes and [plaintiff] cannot prevail"). As the record contains no expert analysis or opinion of any product defect, there is no genuine issue of material fact on this critical point.

### 3. American Family cannot demonstrate that any design defect caused the fire.

American Family also must prove, but has no record evidence to support, that "'the defect was the proximate cause of the injury sustained.'" *Roberson*, 2020 Minn. App. Unpub. LEXIS 724, at *7 (quoting *Marcon*, 573 N.W.2d at 731. The fact of an injury or damage, in itself, following use of a product, does not establish causation. *See, e.g.*, *Kapps v. Biosense Webster, Inc.*, 813 F. Supp. 2d 1128, 1154 (D. Minn. 2011) (concluding that unexplained product abnormality, coupled with product's failure, were insufficient to demonstrate that abnormality caused injury); *Donovan v. Bioject, Inc.*, No.

14

C8-00-1112, 2001 Minn. App. LEXIS 253, at *6–7 (Minn. Ct. App. Mar. 13, 2001) (holding that "[t]he fact that [plaintiff's] arm was injured after she received a shot with a Biojector is insufficient to prove that a defect in the Biojector caused the injury"); *W. Surety & Cas. Co. v. Gen. Elec. Co.*, 433 N.W.2d 444, 447 (Minn. Ct. App. 1988) (when expert testified that headlight that exploded had anomalies but did not testify that headlight was legally defective, i.e., unreasonably dangerous, and did not testify that anomalies caused headlight to explode, evidence was insufficient to submit products-liability claim to jury), *review denied* (Minn. Feb. 22, 1989); *Rients v. Int'l Harvester Co.*, 346 N.W.2d 359, 362 (Minn. Ct. App. 1984) (affirming summary dismissal of products-liability claims where "[t]he burden of proving that the product reached plaintiff without substantial change in the condition in which it was originally sold by the manufacturer simply cannot be met by the plaintiffs").

The only evidence in the record related to the issue of causation is Choudek's opinion that "[a] failure of the cells within the Aeiusny battery pack cannot be eliminated as a cause of this fire." (Mar. 30, 2023 Choudek Report, Ellingson Decl. Ex. 1, at 12.) But this is not evidence that a *defect* within the Aeiusny generator caused the alleged "failure of the cells." Indeed, Choudek himself, in this same report, concedes that "[t]he localized damage sustained within the Aeiusny power supply battery pack suggests a failure of the battery pack *and/or* charging components resulting in a thermal runaway scenario and fire." (*Id.* at 11 (emphasis added).) Choudek, therefore, is unable to identify what part of the Aeiusny generator ("battery pack" or "charging components") failed. (*Id.*) Additionally, Choudek includes in his report a quotation from a National Fire

15

Protection Association research paper which emphasizes that "***the storage and handling of these batteries***" pose risks. (*Id.* (emphasis in original).) There is no evidence in the record, and American Family's experts can provide no opinion, that, in this case, during the 495 days between the date the "Aeiusny 296wh Battery Pack" was allegedly produced and the date of the fire, the batteries were not mishandled or improperly stored. *See Schanhaar v. EF Techs., Inc.*, No. 08-5382 ADM/LIB, 2010 U.S. Dist. LEXIS 109709, at *8 (D. Minn. Oct. 14, 2010) (summarily dismissing products-liability claims; concluding that "without any evidence linking the explosion to the alleged defect in the battery, it cannot be said that the defect, if any, was a 'substantial factor' in the explosion"); *see also Hope v. Hewlett-Packard Co.*, No. 14-11497, 2016 U.S. Dist. LEXIS 8094, at *6 (E.D. Mich. Jan. 25, 2016) (summarily dismissing products-liability claims; concluding that "[c]rucially, none of these [expert] reports identifies any defect in the SDI-manufactured LI-ION batteries as being a proximate cause of the fire").

The extensive gap American Family is required, yet failed to so much as attempt, to bridge to carry its burden on causation is well-illustrated by another recent case, from the Seventh Circuit, involving an almost-identical lithium-ion battery cell rupture. *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771 (7th Cir. 2017). In *Gopalratnam*, as in this action, only a fraction of the lithium-ion battery cells in a battery pack (one out of three) "ejected its contents and warped into an elliptical shape" and the other battery cells did not. *Id.* at 784. This was undisputed, just as it is undisputed in the instant case. *Id.* Choudek, in his expert report, drew the following conclusion from this undisputed fact (and he failed to support it with a citation to any source):

The three ruptured cells inside in the pack are distinctly different in physical appearance. The damage sustained to the pack and individual cells, in a fire attack scenario, should be relatively uniform similar to that damage sustained by the ION auger battery pack.

The localized damage sustained within the Aeiusny power supply battery pack suggests a failure of the battery pack and/or charging components resulting in a thermal runaway and fire.

(Mar. 30, 2023 Choudek Report, Ellingson Decl. Ex. 1, at 11.) The plaintiffs'

expert in *Gopalratnam*, Doughty (whose opinions were excluded), reached the

same conclusion:

Nevertheless, Doughty's reliability fails when it comes to the method by which he derived conclusions *from* these underlying events. In his expert report, Doughty determined that the cells' differential appearance suggested that one cell—Cell A—"had a different failure mechanism." This inference, however, relied almost entirely upon Doughty's premise that the exposure of cells to *external* fire (as opposed to an internal fault) "cause[s] predictable results" amongst the cells. Doughty reasoned that, during the fire in plaintiffs' home, all of the cells would have been exposed to the same external heat conditions. Thus, according to Doughty, "one would expect to see relatively uniform temperature response of all three cells." By extension, because the condition of one cell was "clearly different" than the other cells, Doughty concluded that the "temperature history of [that cell] was unique." Having previously excluded other potential causes (such as electrical and mechanical abuse), "the only trigger . . . that remain[ed was] an *internal* flaw in the cell that [led] to rapid thermal runaway." (emphasis added).

However, the record indicates that Doughty's central underlying premise— that exposure of cells to external fire causes predictable, uniform results— was not only unsupported, but in fact contrary to generally accepted battery science.

*Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d at 784. The Seventh Circuit went on to

explain how the very sources relied upon by Doughty did not support his conclusion. *Id.*

at 784–86. (Because Choudek cites to nothing in support of his conclusions, such analysis

need not be conducted here.) The Seventh Circuit concluded: "In short, Doughty failed to

'bridge the analytical gap' between the accepted differential appearance of the laptop battery cells and his contested conclusion that such differential appearance was caused by an internal fault in Cell A. . . . That is, on the present record, there is no 'rational connection' between Doughty's data and his opinion." *Id.* at 786. Although *Gopalratnam* is a Seventh Circuit case, it was not based on another state's law as Doughty's opinion was ultimately excluded under *Daubert*. Choudek's opinion regarding cause of the fire is likewise subject to exclusion because Choudek, like Doughty, failed to present any "rational connection" between his "data and his opinion." *Id.*

Daniel Choudek, who, as Principal Engineer, reviewed Mr. (Luke) Choudek's expert report, had his expert testimony excluded for this same reason in a case involving a home fire allegedly caused by a purported defect in a compact-disc player. *Am. Fam. Ins. Grp. v. JVC Ams. Corp.*, No. 00-27(DSD/JMM), 2001 U.S. Dist. LEXIS 8001, at *2–3 (D. Minn. Apr. 30, 2001). Importantly, the Court determined that Daniel Choudek's "generalized assertions that he has attended fire investigation seminars and received 'on-the-job training' during his investigation of 600-plus fires does not necessarily qualify him to render broad opinions about fire scene analysis and fire origin." *Id.* at *6; *see also id.* at *7 (concluding that "absent further foundation regarding Choudek's training and experience, the court finds that Choudek is not qualified to offer a broad analysis of the fire and burn patterns in the bedroom or general fire origin theory"). Lucas Choudek's Curriculum Vitae discloses that he is likewise underqualified to render the opinions about fire origin contained in his report as he lists a similarly limited educational background and "training." (*See* Undated Choudek Curriculum Vitae, Ellingson Decl. Ex. 4.)

18

The Court excluded Daniel Choudek's testimony, finding it "wholly deficient under *Daubert*," for reasons that render Lukas Choudek's opinions in this matter equally deficient. *Id.* at *12. In particular, the Court noted: "Based primarily on his visual analysis of the plastic housing remains and burn patterns, [Daniel Choudek] quickly eliminated the computer CPU, monitor and printer as sources of ignition" even though "[h]e conducted no testing on the computer components." *Id.* at *9. The same is true of Lukas Choudek's analysis here—he performed no testing on the other electronic items near the area of the fire's alleged origin before ruling them out as potential causes. (*See generally* Mar. 30, 2023 Choudek Report, Ellingson Decl. Ex. 1.)

The Court in *JVC* took particular issue with Daniel Choudek's failure to conduct actual testing: "After eliminating the computer components as a source of the fire, Choudek focused his attention on the JVC stereo. He set fire to certain portions of the stereo to determine if they would burn, but apart from that limited experiment, he performed no tests on the exemplar unit that was obtained for him." Lukas Choudek's analysis, opinions, and conclusions suffer from the same infirmity.[2]

> **4.    Even if American Family could demonstrate that Pecron LLC had any interaction with the Aeiusny generator at issue, American Family cannot show what condition the Aeiusny generator was in when any interaction concluded.**

In *Roberson*, the Minnesota Court of Appeals held that one of the deficiencies in the plaintiff's case was the lack of "any expert testimony regarding any alleged defect

---

[2]    If this case proceeds, Pecron LLC would move *in limine* to exclude Choudek's expert testimony for these reasons. But given the numerous alternative reasons summary judgment is appropriate, Pecron LLC has yet to expend resources on a *Daubert* motion.

that existed when the gun left the manufacturer's control." 2020 Minn. App. Unpub. LEXIS 724, at *7. Likewise, in *Nelson v. Navistar International Corporation*, the Court summarily dismissed product-liability claims because, among other reasons, "no record evidence suggest[ed] that the defect existed when the [product] left [defendant's] control." No. 10-137, 2011 U.S. Dist. LEXIS 129049, at *12 (D. Minn. Nov. 7, 2011).

Because American Family had no basis to allege that Pecron LLC had any involvement with the Aeiusny generator at issue, American Family alleges that Pecron LLC was involved in *every* part of the distribution chain, *and more*. American Family claims Pecron LLC was involved in "promoting, selling, packaging and distributing" and was also responsible for the "design, manufacture, packaging, sale and delivery" of the Aeiusny generator at issue. (Mar. 8, 2022 Am. Compl., Dkt. No. 30, ¶¶ 27, 34.)

American Family's inability to specify which activities it actually contends Pecron LLC performed, relying instead on demonstrably false assertions (for instance, it is undisputed that the Aeiusny generator was sold by Aeiusny through Amazon) precludes American Family from meeting its burden of demonstrating what condition the Aeiusny generator was in when it allegedly left Pecron LLC's control. Because American Family pled demonstrably false facts—a fact pattern that would exclude Aeiusny and Amazon from the distribution chain—American Family cannot, consistent with its Amended Complaint, so much allege (much less prove) what condition the Aeiusny generator was in when it allegedly left Pecron LLC's possession or control.

**5.      American Family failed to establish that an alternative design for the Aeiusny generator would have been safer.**

When a plaintiff alleges a design defect, "the plaintiff generally bears the burden of establishing the existence of a feasible and safter alternative design." *Roufs*, 1998 Minn. App. LEXIS 395, at *12 (citing *Kallio v. Ford Motor Co.*, 407 N.W.2d 92, 96 (Minn. 1987)); *Kapps*, 813 F. Supp. 2d at 1161 (concluding that defendant was entitled to summary judgment on design-defect claim where plaintiff failed to satisfy "the requirement" or presenting "an alternative design"). American Family did not attempt to meet this burden. Like the plaintiff whose design-defect claim was dismissed in *Kapps*, therefore, American Family "has no evidence to show that, taking into account the costs and benefits of the [product] as currently designed, the [product] should have been designed differently or taken off of the market." 813 F. Supp. 2d at 1161.

**6.      American Family cannot demonstrate that Pecron LLC had actual knowledge of the condition of the Aeiusny generator at issue and the risks involved in that condition.**

Because American Family's theories against Pecron LLC as a purported "designer" or "manufacturer" are based only in negligence—not strict liability— American Family has the additional requirement of establishing that Pecron LLC had "knowledge of the condition of the product and the risks involved in that condition." *Bilotta*, 346 N.W.2d at 622. As American Family can point to no evidence or expert opinion establishing the existence of a defect in the first place, and because the record contains no evidence that Pecron LLC had any involvement with the Aeiusny generator at issue, American Family could make no showing that Pecron LLC had actual

knowledge of any defective condition affecting the Aeiusny generator, much less the risks involved in that condition.

**C.    American Family cannot establish a manufacturing-defect claim as against Pecron LLC as a matter of law.**

For at least the following four reasons, given the record and undisputed facts, American Family could not prevail on a manufacturing-defect theory as against Pecron LLC under Minnesota law.

**1.    American Family cannot demonstrate that any manufacturing processes that led to the creation of the Aeiusny generator were substandard or defective.**

American Family is required to prove that "'the product departs from its intended design.'" *Harrison*, 733 N.W.2d at 454 n.2. "The crux of this claim is that the product, as provided to the public, was defective because the manufacturing, assembly, inspection, packaging, or testing processes failed to turn out the product intended by the defendant manufacturer." *Johnson v. Zimmer, Inc.*, No. 02-1328 (JRT/FLN), 2004 U.S. Dist. LEXIS 6007, at *32 (D. Minn. Mar. 31, 2004) (quoting *Swanson v. Timesavers, Inc.*, Nos. C7-96-1211, C7-96-1600, CX-96-1798, 1997 Minn. App. LEXIS 275, at *3 (Minn. Ct. App. Mar. 11, 1997)). To do this, American Family would have to point to evidence in the record that the "manufacturing processes were substandard or defective." *Id.* at *33 (summarily dismissing manufacturing-defect claim where there was "no evidence that [defendant's] manufacturing processes were substandard or defective").

There is no evidence in the record whatsoever about any manufacturing process— by extension, there is no evidence of any substandard or defective process.

22

**2. American Family offered no expert testimony on any manufacturing defect.**

This argument is presented above, at section V.B.2.

**3. American Family cannot demonstrate that any design defect caused the fire.**

This argument is presented above, at section V.B.3.

**4. American Family cannot demonstrate that Pecron LLC had actual knowledge of the condition of the Aeiusny generator at issue and the risks involved in that condition.**

This argument is presented above, at section V.B.6.

## <u>CONCLUSION</u>

For the foregoing reasons, Pecron LLC respectfully requests that its Motion for Summary Judgment be granted.

**THOM ELLINGSON, PLLP**

Dated: June 16, 2023

*/s/ Samantha J. Ellingson*
Samantha J. Ellingson (#0397448)
Aaron R. Thom (#0392646)
sellingson@thomellingson.com
athom@thomellingson.com
825 Nicollet Mall, Suite 950
Minneapolis, MN 55402
Phone: (612) 286-0505
Fax: (612) 601-8955

**CAUSEY & YE LAW, P.L.L.C.**

Jonathan M. Causey
Jon@CauseyYeLawGroup.com
161 Saint Anthony Avenue, Suite 1008
Saint Paul, MN 55103
Phone: (612) 990-8592
Fax: (515) 214-1434

***Attorneys for Defendant***
***Pecron LLC***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 16, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.


*/s/ Rachel L. Archambeau*
Rachel L. Archambeau
