UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

American Family Insurance Company,
S.I.,

No. 21-cv-1749 (KMM/DJF)

   Plaintiff,

v.

**ORDER**

Pecron, LLC,

   Defendant.

   In this action, American Family Insurance Company, S.I. alleges that Pecron, LLC

designed and manufactured a defective portable battery-powered generator, which caused

significant damage to property that American Family insured. Pecron argues that based

on the evidentiary record, it is entitled to summary judgment for two overarching reasons.

First, Pecron asserts that because no reasonable jury could conclude that it manufactured

the generator that allegedly caused the fire. And second, Pecron contends that American

Family cannot establish the elements of either a strict liability or a negligence claim. As

discussed below, because the Court finds that American Family has failed to present

evidence that would allow it to prevail on either its design- or manufacturing-defect

claims, Pecron's motion for summary judgment is granted.

**BACKGROUND**

   Corey Nihart and Katie Nihart own a home in Fairbault, Minnesota, which they

insured through a homeowner's policy with American Family. In November 2019, the

1

Niharts purchased an Aeiusny 400W Solar Generator Portable Power Station (hereafter "the generator") from Amazon's online store. Corey purchased the generator for a fishing trip in the fall of 2019, and he may not have charged or used the generator at any time after that trip. The generator was stored in a 60' x 40' metal clad detached shed near the Nihart's home.

On the morning of January 2, 2021, the Niharts' son had planned to go ice fishing. The night before the trip, he entered the detached shed and plugged in some equipment for his trip on a plastic table, including the battery inside a Vexilar depth finder, a spare 12V lead acid battery, and the generator. The following morning, around 6:40 a.m., he entered the shed again, but encountered heavy black smoke and the Faribault Fire Department was dispatched to the Nihart property. The Fire Department arrived at 7:00 a.m. and saw that the fire had originated in the northwest corner of the shed, but had burned itself out. Later that day, however, it was discovered that the initial fire had extended into the building's attic insulation and created a smoldering fire. Corey saw smoke coming from the eaves of the shed and called the Fire Department a second time. The building and personal property within it was heavily damaged.

The Niharts submitted an insurance claim to American Family, and American Family paid for the covered damage. American Family then became the Niharts' subrogee for any claims relating to the cause of the fire. American Family hired Whitemore Fire Consultants and Senior Fire Consultant, Douglas Noah, to investigate the origin and cause of the fire. Mr. Noah concluded that the "fire originated in the northwest corner of the . . . workshop portion of the building [and that] . . . the cause of th[e] fire

was a Aieusny® 400W Solar Generator Portable Power Station that was plugged in and

charging." [Ellingson Decl., Ex. 3, Noah Report at 7.]

In reaching those conclusions, Mr. Noah relied, in part, on the laboratory analysis

of artifacts recovered from the scene. That analysis was performed by Electrical

Engineer, Luke Choudek. Mr. Choudek determined that the remains of the other items

that the Niharts' son had plugged in prior to his fishing trip showed signs only of fire

attack. Mr. Choudek also acquired an exemplar Aeiusny generator and compared the

battery cells from the exemplar to the artifacts recovered from the subject generator at the

scene. That comparison showed that some of the generator's cells "had ruptured and

partially ejected their contents."



[Ellingson Decl., Ex. 1, Choudek Report at 8.] Mr. Choudek noted that on several

locations in the exemplar generator, components had been labeled with the name

"Pecron."

Mr. Choudek suggested that the generator contained a design flaw as follows:

> If the battery charger and pack are not properly equipped with charge and discharge monitoring, a failure within a cell can go undetected. A failure within a cell can result in a thermal runaway scenario which can result in fire.

> The three ruptured cells inside the pack are distinctly different in physical appearance. The damage sustained to the pack and individual cells, in a fire attack scenario, should be relatively uniform similar to the damage sustained by [another item that had been plugged in near the generator].

> The localized damages sustained within the [generator] suggests a failure of the battery pack and/or charging components resulting in a thermal runaway scenario and fire.

[*Id.* at 11.]

Further, Mr. Choudek consulted a National Fire Protection Association research

paper entitled *Lithium-Ion Batteries Hazard and Use Assessment*. [*Id.*] The research

paper's introduction noted that use of lithium-ion batteries in portable devices had

become widespread, in large part due to their high energy density. However, that density

"combined with a flammable organic, rather than aqueous, electrolyte has created a

number of new challenges with regard to the design of batteries containing lithium-ion

cells. . . ." [*Id.*] Mr. Choudek noted that, based on its experience, Exponent, the

researcher who prepared the paper, cautioned that "for commercial lithium-ion battery

packs with mature protection electronics packages, the majority of thermal runaway

4

failure in the field are caused by internal cell faults related to cell manufacturing defects."
[*Id.* at 11–12.]

Ultimately, Mr. Choudek offered several opinions regarding the electrical systems
potentially involved in the fire and their role in causing the damage to the Niharts'
property. [*Id.* at 12.] First, he opined that the fire originated in the northwest corner of the
structure. Second, he concluded that the "only identified source of ignition was the
energy released from the failed cells within the [generator]." Third, that a "failure of the
cells within the [generator] cannot be eliminated as a cause of the fire." And finally,
Mr. Choudek ruled out the other electrical items located near the generator as possible
causes of the fire. [*Id.*]

The Court has previously described the procedural history of this litigation in
detail [*see* Doc. 115 at 1–4], and that background will only be briefly summarized here.
American Family originally brought suit solely against Amazon. Amazon later certified
that Pecron, LLC was the product manufacturer pursuant to Minn. Stat. § 544.41, subd. 1,
based on the information Amazon gathered, including its own review of an exemplar
Aeiusny generator and documentation Amazon received suggesting a link between
Pecron and Aeiusny. American Family amended its complaint, naming Pecron as a
defendant and eventually agreed to Amazon's dismissal. Throughout the litigation,
Pecron has insisted that Amazon should never have certified it as the manufacturer of the
generator and American Family should never have added Pecron as a defendant. Pecron
maintains that American Family cannot show it is responsible for manufacturing the
generator at issue.

The parties conducted fairly limited discovery. For example, American Family declined to depose Weixin Shi, Pecron's sole member, and took no discovery from the Niharts, although they were interviewed by American Family's expert witness, Mr. Noah. Pecron did not depose either of American Family's expert witnesses, nor did it engage its own expert witnesses to opine on issues like the cause of the fire or the existence or absence of any design or manufacturing defect in the subject generator. There is also no evidence before the Court concerning Pecron's alleged manufacturing processes, the intended design of the generator, or any opinion from an expert witness concerning whether or how the subject generator or any of its components deviated from the intended design.

## DISCUSSION

### I.    Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Dowden v. Cornerstone Nat'l Ins. Co.*, 11 F.4th 866, 872 (8th Cir. 2021). The moving party must demonstrate that the material facts are undisputed. *Celotex*, 477 U.S. at 322. A fact is "material" only if its resolution could affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When the moving party properly supports a motion for summary judgment, the party opposing summary judgment may not rest on mere allegations or denials, but must show, through the presentation of admissible evidence, that specific facts exist creating a genuine issue for

trial. *Id.* at 256; *McGowen, Hurst, Clark & Smith, P.C. v. Com. Bank*, 11 F.4th 702, 710 (8th Cir. 2021). A dispute of fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Courts must view the inferences to be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Irvin v. Richardson*, 20 F.4th 1199 (8th Cir. 2021). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . . ." *Nunn v. Noodles & Co.*, 674 F.3d 910, 914 (8th Cir. 2012) (quoting *Anderson*, 477 U.S. at 255).

## II.    Analysis

American Family claims that Pecron defectively designed and manufactured the generator, and that those defects caused the Nihart fire. Pecron argues that (1) it did not manufacture the generator and (2) American Family cannot meet its burden to prove its design- or manufacturing-defect claims. The Court finds that Pecron is entitled to summary judgment based the second of these arguments.[1]

---

[1] Pecron's position that it is not the manufacturer is largely based on the same arguments it made in support of its motion for sanctions against Amazon. Pecron argued that Amazon lacked a good-faith basis to certify that Pecron manufactured the Generator. The Court disagreed and found that Amazon had an objectively reasonable basis to certify Pecron as the manufacturer. [Doc. 115 at 6–10.] Opposing summary judgment on this issue, American Family largely relies on the same evidence that informed the Court's decision on the sanctions motion. [Doc. 110 at 5, 7–11.] Because the Court finds that Pecron is entitled to summary judgment for other reasons, it does not have to resolve this issue. However, if it did, the Court would likely find that there are genuine disputes of material fact precluding summary judgment in Pecron's favor on this question.

## A.      Design Defect

Under Minnesota law,[2] a design defect claim requires proof that (1) the product was in a defective condition unreasonably dangerous for its intended use; (2) the defect existed when it left the manufacturer's control; and (3) the defect was the proximate cause of the injury sustained. *Green Plains Otter Tail, LLC v. Pro-Environmental, Inc.*, 953 F.3d 541, 545-46 (8th Cir. 2020). A manufacturer has a duty to design the product to avoid an unreasonable risk of harm when used as intended and for reasonably foreseeable, but unintended uses. *Id.* at 546. "Whether a product is defective is generally a question of fact," but it becomes a question of law "where reasonable minds cannot differ." *Thompson v. Hirano Tecseed Co., Ltd.*, 456 F.3d 805, 809 (8th Cir. 2006).

"To determine whether there is enough evidence to submit the claim to a jury, the court must balance the likelihood of harm, and the gravity of harm if it happens, against the burden of the precaution which would be effective to avoid the harm." *Young v. Pollocl Eng'g Gr., Inc.*, 428 F.3d 786, 789 (8th Cir. 2005) (internal quotations omitted). Consequently, in demonstrating that a product is unreasonably dangerous "'the plaintiff ordinarily has the burden of showing the existence of an alternative design that was safer.'" *Wagner v. Hesston Corp.*, 450 F.3d 756, 760 (8th Cir. 2006) (quoting *Kallio v. Ford Motor Co.*, 407 N.W.2d 92, 96 (Minn. 1987)). This showing "'requires production of evidence of the existence of a feasible, alternative safer design,'" and it is unnecessary only in "rare cases" where a product "'should be removed from the market rather than

---

[2] The parties agree that Minnesota law applies in this diversity action.

redesigned.'" *Id.* (quoting *Kallio*, 407 N.W.2d at 96); *see also Kapps v. Biosense Webster, Inc.*, 813 F. Supp. 2d 1128, 1161 (D. Minn. 2011) ("Because Kapps has no evidence to show that, taking into account the costs and benefits of the Lasso catheter as currently designed, the catheter should have been designed differently or taken off of the market, Biosense is entitled to summary judgment on Kapps's design-defect claim.").

The Court finds that Pecron is entitled to summary judgment because American Family has failed to point to any evidence creating a genuine issue for trial regarding the existence of a feasible, alternative safer design for the generator. American Family was required to show that the generator was unreasonably dangerous for its intended use, and "a plaintiff cannot prevail in a design-defect case simply by arguing, in the abstract, that a product is defectively designed." *Kapps*, 813 F. Supp. 3d at 1161. As explained by the Minnesota Supreme Court in *Kallio*, the Eighth Circuit in *Wagner*, and the District Court in *Kapps*, this means that American Family must show the existence of a feasible, alternative safer design.[3]

American Family does not disagree that proof of reasonable design alternatives is required, but argues that the evidence in the record satisfies its burden and a jury should decide the issue. Specifically, American Family asserts Mr. Choudek "very specifically"

---

[3] American Family has not argued that this is one of the rare cases where the generator would be deemed unreasonably dangerous because it should be removed from the market rather than redesigned. And American Family points to no evidence in the record addressing "the relative costs and benefits" of the allegedly defectively designed generator "weighed against the relative costs and benefits of . . . the removal of the [generator] from the market." *See Kapps*, 813 F. Supp. 2d at 1161 (discussing *Kallio*, 407 N.W.2d at 96–97 & n.8). There is no basis on which a reasonable jury could find that removal from the market is required here.

identifies a feasible, alternative safer design when he explains that a failure within a cell, which can cause a thermal runaway and a fire, can go undetected if a lithium-ion battery charger and pack are not equipped with "charge and discharge monitoring." [Doc. 110 at 23 (citing Choudek Report at 11).] According to American Family, this demonstrates that if the Generator had been equipped with charge and discharge monitoring, a thermal runaway like the one at issue in this case is less likely to occur. [*Id.*] Further, American Family points out that Mr. Choudek identified that NFPA 921 warns about the risks of fire associated with lithium-ion batteries, and that this publication does not contain similar warnings for nickel-based or lead-acid-based battery technologies, "thus providing anther design alternative, that in [Choudek's] opinion could have prevented this fire." [*Id.*]

The Court finds Mr. Choudek's Report fails to create a genuine issue for trial. First, the Court finds that neither of these brief and undeveloped statements genuinely articulates an alternative design. For instance, Mr. Choudek does not even define "charge and discharge monitoring" to show that it is useable in a similar generator. And the fact that a particular publication doesn't contain a warning about other types of batteries is well short of identifying an alternative design for this type of generator.

But even assuming that the statements in Mr. Choudek's report identify alternative design proposals, American Family still points to no evidence suggesting that adding charge and discharge monitoring or using nickel- or lead-acid-based battery technology would be *feasible*. Under the "reasonable-care balancing test that applies in *all* design-defect cases, the relative costs and benefits of an allegedly defective design must be

weighed against the relative costs and benefits of . . . a proposed alternative design."

*Kapps*, 813 F.3d at 1161.

Mr. Choudek's report says nothing about the relative costs and benefits of adding

charge and discharge monitoring to the subject generator, nor does it address the costs

and benefits associated with using different kinds of battery technologies. For example,

there is nothing in Mr. Choudek's report (or anywhere else in the record, for that matter)

that discusses what it would cost to add charge and discharge monitoring to the generator.

Similarly, there is no evidence addressing how adding such monitoring might affect the

generator's utility. With respect to the possibility of using lead-acid batteries or nickel-

based batteries, Mr. Choudek offers no opinion regarding how commonly they are used

in this type of generator, whether they would otherwise achieve similar functionality as

the lithium-ion battery, how they would be cost-effective, or whether they would present

some other safety problem. Because American Family has no evidence to show that,

taking into account the costs and benefits of [the generator] as currently designed, the

[generator] should have been designed differently," Pecron is entitled to summary

judgment on American Family's design-defect claim. *Id.*

In its briefing, American Family suggested that Mr. Choudek will testify at trial

that "the use of different batteries or equipping the product with charge and discharge

monitoring would have created a safer, viable alternative design for the product."

[Doc. 110 at 15.] Similarly, at oral argument, American Family hinted that

Mr. Choudek's trial testimony could amplify or expand on his somewhat spartan report.

However, these arguments are insufficient for American Family to defeat summary

judgment because it was required to "designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted), not simply to promise the unveiling of such facts at trial. American Family "may not avoid summary judgment by asserting that it can produce evidence that will support its arguments at trial." *Canal Ins. Co. v. Kwik Kargo, Inc.*, No. 08-cv-439 (JNE/RLE), 2009 U.S. Dist. LEXIS 35177, at *11–12 (D. Minn. Apr. 21, 2009); *Schiffler v. Home Depot USA, Inc.*, No. 07-cv-4303 (JRT/LIB), 2013 WL 980334, at *8 (D. Minn. Feb. 15, 2003) (explaining that a plaintiff cannot defeat summary judgment "by baldly asserting that he intends to produce witnesses and evidence at trial" to support his claims) (quoting *Thulin v. EMC Mortg. Corp.*, No. 06-cv-3514 (RHK/JSM), 2007 U.S. Dist. LEXIS 76864, at *7–9 (D. Minn. Oct. 16, 2007)), *R&R adopted by*, No. 07-cv-4303 (JRT/LIB), 2013 WL 980330 (D. Minn. Mar. 13, 2013).

For these reasons, the Court finds that Pecron is entitled to summary judgment on American Family's design-defect claims.[4]

### B.  Manufacturing Defect

At its essence, a manufacturing-defect claim is premised on "some manufacturing flaw—some deviation from a flawless product—that renders a product unreasonably

---

[4] "Minnesota merges negligence and strict liability claims into a single products liability theory, which employs a reasonable-care balancing test to determine whether a product is defective." *Thompson*, 456 F.3d at 809. Accordingly, the Court's discussion concerning American Family's design-defect claims applies equally to its strict liability and negligence theories of recovery. *See Dolan v. Boston Scientific Corp.*, No. 20-cv-1827 (NEB/LIB), 2021 WL 698777, at *1 (D. Minn. Feb. 23, 2021) (analyzing strict liability and negligence claims together).

dangerous." *Perry v. Boston Scientific Family*, No. 16-cv-137 (PJS/HB), 2016 WL 10637082, at *5 (D. Minn. Dec. 1, 2016) (quotations omitted). To prevail on a manufacturing defect claim under Minnesota law, a plaintiff must show that the product was defective because it departed from its intended design; it was in that defective condition when it left the defendant's control; and the defect proximately caused the plaintiff's damages. *See Sadeghi-A v. Daimler Trucks N. Am. LLC*, No. 19-CV-2373 (MJD/ECW), 2022 WL 16554615, at *3 (D. Minn. Oct. 31, 2022). "The crux of the claim is that the product, as provided to the public, was defective because the manufacturing, assembly, inspection, packaging, or testing processes failed to turn out the product intended by the defendant manufacturer." *Johnson v. Zimmer, Inc.*, No. 02-cv-1328 (JRT/FLN), 2004 WL 742038, at *10 (D. Minn. Mar. 31, 2004) (citing *Swanson v. Timesavers, Inc.*, No. C7-96-1211, 1997 WL 103917, at *3 (Minn. Ct. App. Mar. 11, 1997)).

Pecron argues that it is entitled to summary judgment because (1) American Family cannot demonstrate that any manufacturing processes involved in the production of the generator were substandard or defective; (2) there was no expert testimony establishing any manufacturing defect; (3) there is no evidence that any alleged manufacturing defect caused the fire; and (4) no evidence demonstrates that American Family knew of any manufacturing defect and the risks involved, as required to sustain a negligence-based theory of recovery. In response, American Family argues that Mr. Choudek's Report contains sufficient evidence regarding the existence of a manufacturing defect in the generator and on the issue of causation to defeat Pecron's

motion for summary judgment. The Court finds that American Family's manufacturing-defect claims fail because it has pointed to no evidence from which a reasonable jury could find that the product departed from its intended design or that a manufacturing-defect caused the Nihart fire.

Mr. Choudek stated that the artifacts of the generator's battery cells recovered from the Nihart shed revealed that some cells had ruptured and ejected their contents in a manner consistent with "thermal runaway." Further, he noted that the NFPA research paper regarding lithium-ion battery hazards, which he consulted in preparing his Report, suggested that "the majority of thermal runaway failures in the field are caused by internal cell faults related to cell manufacturing defects." [Choudek Report at 11–12.] But these statements do not establish that the subject generator or the lithium ion cells within it departed in any way from their intended design. In fact, Mr. Choudek's Report leaves unanswered more questions than it resolves. As noted, there is no indication of what types of "cell manufacturing defects" are responsible for the "internal cell faults" that purportedly cause most thermal runaway failures. It is unclear whether the purported defects are all the same or whether some are due to use of improper materials, others are due to substandard manufacturing methods, and still others involve other departures from design specifications.

Moreover, Mr. Choudek does not explicitly say that the subject generator actually had a defect that caused the thermal runaway. Although Mr. Choudek indicates that the subject generator is the likely source of the fire that damaged the Nihart shed, and he states that the fire likely started due to a thermal runaway event in some of the

generator's cells, he pointedly does not opine that the evidence of thermal runaway he observed in the cells from the generator were caused by internal cell faults related to cell manufacturing defects. In other words, Mr. Choudek fails to connect the broad statement excerpted from the NFPA research paper to any specific observation about the subject generator, any evidence about the manufacturing processes of the subject generator, any alleged flaw in those processes, or to anything about the subject generator's intended design. American Family points to no other evidence in the record to support its contention that the subject generator had a manufacturing defect or that the Nihart fire was caused by a manufacturing defect.

Based on this record, even viewing the evidence in the light most favorable to American Family, to return a plaintiff's verdict on the manufacturing-defect claims, the jury would be required to engage in rank speculation. *National Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602, 610 (8th Cir. 1999) ("A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment."). The jury would have no information about the intended design of the lithium-ion cells in the subject generator or how the cells may have deviated from that intended design.

Because American Family points to no evidence to show that the generator "was in any way flawed," or that Pecron's "manufacturing processes were substandard or defective," summary judgment in Pecron's favor is appropriate. *See Johnson*, 2004 WL 742038, at *10 (granting summary judgment to defendant on plaintiff's manufacturing-defect claims under strict liability and negligence theories where the evidence did not identify how the femoral hip stem implant allegedly deviated from the defendant's

intended design); *cf. Netland v. Hess & Clark, Inc.*, 140 F. Supp. 2d 1011, 1017 (D. Minn. 2001) ("Netland has not produced any evidence of errors in the manufacture of Bovinol by Defendant other than the adequacy of the warning [which could not be the basis of a claim due to preemption].").[5]

    This conclusion is reinforced by comparing American Family's inability to identify any particular manufacturing defect to cases where courts applying Minnesota law have found such claims to be viable. In the latter, the plaintiffs offered evidence of how the product at issue departs from its intended design. For example, the court denied a defendant's motion for summary judgment in *Seefeld v. Crown, Cork & Seal Co., Inc.*, 779 F. Supp. 461 (D. Minn. 1991), where there was evidence that the reason an aerosol can burst along its "sideseam," causing the plaintiff to be severely burned, was because of a "cold weld [which] is an insufficiently fused or bonded weld." *Id.* at 463. In *Yang v. Cooper Tire & Rubber Co.*, the Minnesota Court of Appeals found that a trial court should have allowed a jury to decide the plaintiff's manufacturing-defect claim where the

---

[5] Other courts have reached similar conclusions. *See National Bank of Commerce*, 165 F.3d at 609 (applying Arkansas strict liability law and finding the plaintiffs failed to introduce evidence that the pesticides they used to treat their home had a manufacturing flaw where they presented scholarly articles suggesting that the active ingredient in the pesticide often contains toxic substances); *Depositors Ins. Co. v. Wal-Mart Stores, Inc.*, 506 F.3d 1092, 1095 (8th Cir. 2007) (concluding, under Iowa law, that the district court properly granted summary judgment on the plaintiffs' manufacturing-defect claims where the plaintiffs failed to offer evidence "showing (1) the intended design of [the products] or (2) how the manufacturing of [the products] departed from the intended product designs"); *see also Juliar v. Ethicon, Inc.*, No. 21-cv-354 (MJD/BRT), 2022 WL 23624, at *2 (D. Minn. Jan. 3, 2022) (dismissing manufacturing-defect claims for failure to state a claim where plaintiffs failed to identify how the product allegedly departed from its intended design or that a deviation from the expected manufacturing process occurred and citing cases).

plaintiff provided evidence that the inner liner of defendant's tire "was stretched too thin" and was several thousandths of an inch thinner than the liner's optimal width. No. A13-0756, 2014 WL 502959 at *2-3 (Minn. Ct. App. Feb. 10, 2014). In *Duxbury v. Spex Feeds, Inc.*, the court found sufficient evidence to support a jury's verdict on a products liability claim based on a manufacturing-flaw theory where the "evidence establishe[d] that toxins were in the hog feed when it left [the defendant's] control," causing the plaintiffs' gestating sows to be injured. 681 N.W.2d 380, 393 (Minn. Ct. App. 2004). And in *Swanson v. Timesavers, Inc.*, the court affirmed a jury verdict for a plaintiff on a manufacturing-defect claim where the defendant's process for assembling the control panel of a sander that injured the plaintiff was flawed such that it led to improper color coding, labeling, and location of switches, and the installer's assembly of the control panel failed to match safety standards. No. C7-96-1211, 1997 WL 103917 at *3-4 (Minn. Ct. App. Mar. 11, 1997). What was present in *Seefeld*, *Yang*, *Duxbury*, and *Swanson* is utterly missing here.

Finally, the Court notes that the Minnesota Supreme Court has held that in certain product liability cases, the plaintiff "may rely upon circumstantial evidence from which it can reasonably be inferred that it is more probable than not that the product was defective when it left defendant's control." *Lee v. Crookston Coca-Cola Bottling Co.*, 188 N.W.2d

426, 434 (Minn. 1971);[6] *Boda v. Viant Crane Serv., LLC*, No. 19-CV-1437 (HB), 2021 WL 4444733, at \*9 (D. Minn. Sept. 28, 2021), *aff'd,* 42 F.4th 935 (8th Cir. 2022) ("*Boda II*"). In such cases, the plaintiff is not necessarily required to prove "a specific defect." *Lee*, 188 N.W.2d at 434. However, even so the plaintiff is required to present evidence showing that the product "was defective *when it left the defendant's control*." *Boda*, 2021 WL 4444733, at \*9. "A plaintiff's evidence must reasonably eliminate improper handling or use of the product by others to permit a jury to reasonably infer that the product was defective at the time it left the defendant's control." *Id.* (cleaned up). "The burden is not on the defendant to prove there was no defect, or to affirmatively prove mishandling occurred after delivery." *Id.* at \*11; *Boda II*, 42 F.4th at 940 (explaining that the plaintiff's evidence failed to reasonably eliminate other possible causes of the product at issue malfunctioning, including mismanagement by the plaintiff's employer and coworkers).

　　Here, the Court finds that American Family cannot prevail on its manufacturing defect claims because it introduces no evidence that reasonably eliminates improper handling or misuse of the product, which is especially problematic given the substantial passage of time between Mr. Nihart's purchase of the generator and the fire. *See Boda II*,

---

[6] The *Lee* court compared this circumstantial-evidence approach in proving a defect in strict liability cases to cases where the doctrine of res ipsa loquitur "is relied upon as the theory of recovery" in a negligence case. 188 N.W.2d at 434. Here, the parties did not address res ipsa or cite cases applying the doctrine in the strict liability context, and American Family never sought to invoke the doctrine. But for the reasons discussed below, the Court finds that Pecron would be entitled to summary judgment had the issue been squarely presented.

42 F.4th at 939 ("[W]here lapse of time and substantial opportunity for mishandling of a product by third parties make it equally probable a defective condition developed after leaving the defendant's control, neither the principles of res ipsa loquitur nor strict liability will support a finding of liability.") (quoting *W. Sur. & Cas. Co. v. Gen. Elec. Co.*, 433 N.W.2d 444, 449 (Minn. Ct. App. 1988)). More than a year passed from when Mr. Nihart purchased the generator, and may have used it only once, and when the fire occurred. And although the record lacks detail, it appears that the generator was stored in an outbuilding. American Family did not depose Mr. Nihart, nor any of the other Niharts, regarding the handling of the generator during that entire period. Nor did American Family offer any other evidence on this issue.

American Family suggests in its brief that it could call the Niharts at trial "who are prepared to testify about their use of the generator from the time of purchase until the date of loss." [Doc. 110 at 23.] But as noted above, a party may not defeat a motion for summary judgment by suggesting that it can produce evidence that will support its claims at trial. *Canal Ins. Co.*, 2009 U.S. Dist. LEXIS 35177, at *11–12; *Schiffler*, , 2013 WL 980334, at *8. American Family states that Pecron failed to depose the Niharts, and therefore, Pecron has "no evidence of any mishandling or improper storage." [*Id.* at 23–24.] This argument similarly does nothing to stave off summary judgment: it is American Family's burden to reasonably eliminate improper handling when the generator was unquestionably out of Pecron's control, not Pecron's burden to "to affirmatively prove mishandling occurred after delivery." *Boda*, 2021 WL 4444733, at *11.

The only evidence in the record concerning the handling of the generator after Mr. Nihart purchased it from Amazon and before the fire is a brief comment in Mr. Noah's expert Report. Mr. Noah indicates that when he interviewed Mr. Nihart, he "stated it was purchased for a fishing trip he was going on [in the fall of 2019] and that it was possible the unit had not been charged since that trip." [Noah Report at 2.] However, assuming it is even appropriate to consider Mr. Noah's comment about what Mr. Nihart told him, the Court finds that such an equivocal statement would not permit a jury to find that American Family met its burden to reasonably eliminate improper handling or misuse of the product. *See Lee*, 188 N.W.2d at 429 (finding the evidence sufficient to meet plaintiff's prima facie burden where "Plaintiff testified that she was 'positive' and there was 'not one bit' of question in her mind that she had not 'struck' the 'bottle on anything' as she was transferring it to the cooler"); *Boda II*, 42 F.4th at 939–40 (finding plaintiff's evidence insufficient where there was no evidence about how the crane was handled when it was in the employer's hands prior to the accident and distinguishing plaintiff's lack of evidence from the adequate showing in *Daleiden v. Carborundum Co.*, 438 F.2d 1017 (8th Cir. 1971)).

For these reasons, the Court finds that Pecron is entitled to summary judgment on American Family's manufacturing-defect claims.

## III.    Order

Based on the foregoing discussion, **IT IS HEREBY ORDERED THAT** Pecron, LLC's Motion for Summary Judgment [Doc. 103] is **GRANTED** and this matter is **DISMISSED WITH PREJUDICE**.

**Let Judgment be entered accordingly**.

Date: December 14, 2023

    *s/Katherine Menendez*
Katherine Menendez
United States District Judge